# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
### BRIDGEPORT DIVISION

In Re:  
    60 SHELTER ROCK ASSOCIATES, LLC,  
    Debtor.  
-------------------------------------------------- X

Chapter 11  
Case No. 14-50217 (AHWS)

[Proposed]

# PLAN OF REORGANIZATION

**Proposed by**  
**60 Shelter Rock Associates, LLC**  
**Dated June 2, 2014**

In accordance with 11 USC §§ 1121 - 1125, the Debtor 60 Shelter Rock Associates, LLC (the "Debtor"); submits this Plan of Reorganization.

The Debtor in this chapter 11 case, 60 Shelter Rock Associates, LLC, commenced this Case by filing a voluntary bankruptcy petition on February 13, 2014 under chapter 11 of the Bankruptcy Code. This document is the chapter 11 plan of reorganization proposed by the Debtor in this Case. Accompanying this Plan is the Disclosure Statement which has been approved by the Bankruptcy Court and is provided to assist you in understanding this Plan and, if the reader is eligible, whether to cast a vote to approve this Plan.

## ARTICLE I
## SUMMARY AND DEFINITIONS

This Plan of Reorganization under chapter 11 of the Bankruptcy Code proposes to pay creditors of the Debtor, 60 Shelter Rock Associates, LLC, from the rental income received by the Debtor from its operation of its business as a commercial landlord. This Plan provides for two classes of secured claims; one class of unsecured claims; and one class of equity security holders. Unsecured creditors holding allowed claims will receive distributions, which the Debtor of this Plan has valued at 100 cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.

*Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)*

### Defined Terms

For the purpose of this Plan, the definitions found in the Bankruptcy Code shall apply to this Plan and all capitalized terms shall have the meaning assigned to them immediately below:

**"Administrative Expense Claim"** shall mean: (I) any Claim constituting a cost or expense of administration in this Case on or after the Petition Date but prior to the Effective Date, under Bankruptcy Code §§ 503(b), 507(a)(1), 507(b) or 1114(e)(2), including: (a) any actual and necessary costs and expenses of preserving the estate of the Debtor, (b) any actual and necessary costs and expenses of operating the business of the Debtor, (c) any indebtedness or obligation incurred or assumed by the Debtors (including any executory contracts of the Debtors assumed pursuant to Bankruptcy Code § 365 by order of the Bankruptcy Court or the Plan) in connection with the conduct of its business or for the acquisition or lease of property or the rendition of services, and (d) any allowed compensation or reimbursement of expenses awarded or allowed under Bankruptcy Code §§ 330(a), 331 or 503, and (ii) any fees or charges assessed against the estate of the Debtor under 28 U.S.C. § 1930.

**"Allowed"** shall mean:

> With respect to any Claim other than an Administrative Expense Claim as to which a proof of claim was filed by the deadline of June 16, 2014 as fixed by the Bankruptcy Court in accordance with Bankruptcy Rule 3003(c)(3), (I) as to which no objection to the allowance thereof has been interposed within the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or an order of the Bankruptcy Court, (ii) as to which an objection to the allowance thereof has been interposed within such time as is set by the Bankruptcy Court pursuant to the Plan, the Bankruptcy Code, the Bankruptcy Rules, or an order of the Bankruptcy Court, such Claim to the extent that such objection has been overruled in whole or in part by an order of the Bankruptcy Court.

> With respect to any Administrative Expense Claim:
> (I) that represents a Claim of a Professional, such a Claim to the extent it is allowed in whole or in part by an order of the Bankruptcy Court; or
> (ii) other than with respect to a Claim of a Professional, a Claim to the extent it is allowed in whole or in part by an order of the Bankruptcy Court and only to the extent that such allowed portion is deemed, pursuant to an order of the Bankruptcy Court, to constitute a cost or expense of administration under Bankruptcy Code §§ 503 or 1114.

**"Allowed Amount"** shall mean the dollar amount of an Allowed Claim.

**"Ballot"** shall mean the form or forms distributed to certain Claimants or holders of an equity interest in the Debtor by which such parties may indicate acceptance or rejection of the Plan.

**"Bankruptcy Code"** shall mean title 11 of the United States Code and applicable portions of titles 18 and 28 of the United States Code, each as in effect on the Petition Date or as thereafter amended to the extent such amendment is applicable to the Case.

**"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the District of Connecticut.

**"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure, as amended, as applicable to the Case, including the Local Rules of the Bankruptcy Court.

**"Case"** shall mean the chapter 11 small business case: *In re 60 Shelter Rock Associates, LLC* (case number: 14-50217) pending the in the Bankruptcy Court and being the Case for which this Plan applies.

**"Claim"** shall mean a claim (as defined in Bankruptcy Code § 101(5)) against the Debtor including any right to: (I) payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) an equitable remedy for breach of performance if such breach gives rise to a right to payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.

**"Claimant"** shall mean the holder of a Claim.

**"Class"** shall mean a group of Claims or equity security interests in the Debtor classified by the Plan pursuant to Bankruptcy Code § 1122(a).

**"Confirmation Date"** shall mean the date the clerk of the Bankruptcy Court enters on the docket the Confirmation Order.

**"Confirmation Hearing"** shall mean the hearing that the Bankruptcy Court conducts to consider confirmation of the Plan pursuant to Bankruptcy Code § 1129, as such hearing may be adjourned or continued from time to time.

**"Confirmation Order"** shall mean the order(s) entered by the Bankruptcy Court on the Confirmation Date confirming the Plan.

"**Confirmation Procedures Order**" shall mean the order(s) of the Bankruptcy Court (I) approving procedures relating to the solicitation and tabulation of votes with respect to the Plan; and (ii) establishing the basis for calculating the amount of any Claim for voting purposes.

"**Debtor**" shall mean 60 Shelter Rock Associates, LLC.

"**Effective Date**" shall mean the date thirty days following the Confirmation Date.

"**Encumbrance**" shall mean with respect to any property or asset (whether real or personal, tangible or intangible), any mortgage, lien, pledge, charge, security interest, assignment as collateral, or encumbrance of any kind or nature in respect of such property or asset (including any conditional sale or other title retention agreement, any security agreement, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction) to secure payment of a debt or performance of an obligation.

"**Entity**" shall mean any person, individual, corporation, company, limited liability company, firm, partnership, association, joint stock company, joint venture, estate, trust, business trust, unincorporated organization, any other entity, the United States Trustee or any Governmental Unit or any political subdivision thereof.

"**Equity Interest**" shall mean any interest in any of the Debtors pursuant to an "equity security" within the meaning of Bankruptcy Code § 101(16).

"**General Unsecured Claim**" shall mean any Claim in the Case that is not an Administrative Expense Claim, Priority Tax Claim, Priority Claim, or Secured Claim.

"**Governmental Unit**" shall mean any domestic, foreign, provincial, federal, state, local or municipal (a) government, or (b) governmental agency, commission, department, bureau, ministry, or other governmental entity, or (c) any other "governmental unit" (as defined in Bankruptcy Code § 101(27)).

"**IRC**" shall mean the Internal Revenue Code of 1986, as amended, and any applicable regulations (including temporary and proposed regulations) promulgated thereunder by the United States Treasury Department.

"**IRS**" shall mean the United States Internal Revenue Service.

"**Petition Date**" shall mean March 25, 2009, the date on which the Debtor filed its voluntary petition for relief commencing the Case.

"**Plan**" shall mean the provisions set forth in this document as may be modified by the Plan Proponents in accordance with the Bankruptcy Code or by order of the Bankruptcy Court.

**"Plan Documents"** shall mean the Plan and the Disclosure Statement.

**"Priority Claim"** shall mean any Claim (other than an Administrative Expense Claim or Priority Tax Claim) to the extent such Claim is entitled to priority in right of payment under Bankruptcy Code § 507.

**"Priority Tax Claim"** shall mean a Claim that is of a kind specified in Bankruptcy Code §§ 502(I) or 507(a)(8).

**"Professional"** shall mean an Entity (I) employed pursuant to an order in entered in accordance with Bankruptcy Code §§ 327, 328, 363, 524(g)(4)(B)(I) and/or 1103 and to be compensated for services pursuant to Bankruptcy Code §§ 327, 328, 329, 330 and/or 331, or (ii) for which compensation and reimbursement have been allowed by the Bankruptcy Court pursuant to Bankruptcy Code § 503(b)(4).

**"Property"** shall mean the commercial building located at 60 Shelter Rock Road, Danbury, Connecticut.

**"Schedules"** shall mean the schedules of assets and liabilities and the statements of financial affairs filed in this Case by the Debtor with the Bankruptcy Court as required by Bankruptcy Code § 521 and the Bankruptcy Rules, as such schedules and statements may be amended by the Debtor in accordance with Bankruptcy Rule 1007.

**"Secured Claim"** shall mean a Claim that is: (I) secured by a lien (as such term is defined in Bankruptcy Code § 101(37)) on property in which the Debtors have an interest, which lien is valid, perfected, and enforceable under applicable law or by reason of an order, or (ii) entitled to setoff under Bankruptcy Code § 553, to the extent of (A) the value of the Claimant's interest in the Debtor's interest in such property or (B) the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code § 506(a).

**"Tax"** means all taxes, customs, duties, levies, fees, tariffs, imposts, deficiencies, or other charges or assessments of any kind whatsoever, including all net income, gross income, capital gains, gross receipt, property, franchise, sales, use, excise, withholding, payroll, employment, social security, worker's compensation, unemployment, occupation, severance, capital stock, ad valorem, value added, transfer, gains, profits, net worth, asset, transaction, business consumption, or other taxes, and any interest, penalties, fines, additions to tax, or additional amounts with respect thereto, imposed by any governmental authority (whether domestic or foreign).

**"Tax Item"** shall mean any item of income, gain, loss, deduction, credit, provisions for reserves, recapture of credit, net operating loss, net capital loss, tax credit, sales, revenues, property or asset values, capital or any other item which increases or decreases FSA Taxes paid or payable, including

an adjustment under IRC section 481 (or comparable provisions of the FSA Tax law of any other jurisdiction (domestic or foreign)) resulting from a change in accounting method, the allowance or disallowance in whole or in part of, or assessment with respect to, a tentative allowance of refund claimed on Form 1139, the allowance or disallowance in whole or in part of a net operating loss, net capital loss, or tax credit claimed on a Tax Return, an amended Tax Return or claim for refund, or an adjustment attributable to a quick refund of overpayment of estimated tax.

**"Tax Period"** shall mean any period for, or with respect to, which a Tax Return is or has been filed, is required to be filed or may be filed.

**"Tax Return"** shall mean any return, filing, questionnaire, information return or other document required or permitted to be filed, with respect to any Tax, including requests for extensions of time, filings made with estimated tax payments, claims for refund, Forms 1139 and amended returns, that has been, or hereafter may, be filed for any Tax Period with any tax authority (whether domestic or foreign).

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

In accordance with Bankruptcy Code § 1123(a)(1), Administrative Expense Claims and Priority Tax Claims are not classified and are excluded from the Classes set forth below. The Plan provides for four classes of claims and interests as follows:

1)   Secured Claimant I : The Allowed Claim for the payment of real estate taxes owed to the City of Danbury (now assigned to MTAG Caz Creek, LLC to the extent allowed as a secured claim under § 506 of the Bankruptcy Code. This claimant holds a first priority security interest in the Property, by virtue of the status afforded municipalities by Connecticut General Statutes § 12-172, and assignees thereof. $330,197.12 as of 6/2/2014.

2)   Secured Claimant II: The Allowed Claim of the Savings Bank of Danbury, to the extent allowed as a secured claim under § 506 of the Bankruptcy Code and not disputed. Savings Bank of Danbury holds a secured claim in the Property by virtue of a First Mortgage recorded on the land records of the City of Danbury.

This claim in excess of $3,000,000 is disputed on two grounds. First, Savings Bank of Danbury has previously agreed to sell its loan and security interest at a substantial discount to the debt owed to a party friendly to the Debtor who has agreed to re-finance said amounts owed. Savings Bank of Danbury has reneged on this agreement. Second, the Debtor has several meritorious claims against Savings Bank of Danbury for breach of contract, misrepresentation, fraud and violations of the Connecticut Unfair Trade Practices Act, which, if successfully litigated, would result in a further offset against the claim asserted.

3) <u>General Unsecured Claimants</u>: The Allowed Claims of ten creditors to the extent allowed under § 502 of the Bankruptcy Code, included those creditors with secured claims for which the value of the collateral is less than the amount of the claim.

Of the ten creditors listed by the Debtor on the voluntary petition, two are disputed.

4) <u>Equity Interest Holders</u>: The Debtor is a Connecticut limited liability company with 13 members, whose interests in the debtor are as follows:

Anthony Sica, 7 Elm Court, Port Washington, NY 11050 - 250 Shares - Class B

Arthur Steinberg, 84 73rd Street, Brooklyn, NY 11209 - 1500 Shares - Class A

Arthur Steinberg, 84 73rd Street, Brooklyn, NY 11209 - 666 Shares - Class B

Frederika Cohen, 155 West 68th Street, New York, NY - 333 Shares - Class B

J. Peter Lynch, 407 Pound Ridge Road, South Salem, NY 10590 - 1500 Shares - Class A

J. Peter Lynch, 407 Pound Ridge Road, South Salem, NY 10590 - 333 Shares - Class B

Joseph Reda, 55 Swan Drive, Massapequa, NY 11758 - 333 Shares - Class B

Lurie Investments, LLC, 424 West Mountain Road, Ridgefield, CT 06877 - 1421 Shares - Class B

Lurie Investments, LLC, 424 West Mountain Road, Ridgefield, CT 06877 - 7000 Shares - Class A

Michael Steinberg, 1965 Harvest Circle, State College, PA 16803 - 222 Shares - Class B

Mitchell Steinberg, 14485 SW 57 Terrace, Miami, FL 33183 - 222 Shares - Class B

Robert Bove, 432 West 56th Street, New York, NY 10019 - 250 Shares - Class B

Ronald Steinberg, 2107 Cedar Circle, Catonsville, MD, 21228 - 222 Shares - Class B

Stuart Longman, 424 West Mountain Road, Ridgefield, CT 06877 - 5000 Shares - Class A

Thomas McGowan, 110 Willett Road, Saunderstown, RI 02874 - 333 Shares - Class B

Thomas Van Deventer, 108 Piping Rock Road, Locust Valley, NY 11560 - 166 Shares - Class B

William Reed, P.O. Box 618, Ellington, CT 06029 - 333 Shares - Class B

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE AND PRIORITY TAX CLAIMS

<u>Administrative Expense Claims</u>: Each holder of an administrative expense claim allowed under § 503 of the Bankruptcy Code will be paid in full in cash by the Debtor on the Effective Date of this Plan, or as further incurred during the implementation of the Plan. These claims include the fees required to be paid under chapter 123 of title 28 of the United States Code, including specifically the fees which have accrued in this Case and remain unpaid which must be paid to the US Trustee as required by 28 U.S.C. §1930(a)(6). Further, additional legal fees may be incurred by Debtor. To day such fees have been paid in full by affiliates of the Debtor. There is no assurance that future attorneys fees claims may be made as administrative claims against the estate of the Debtor.

<u>Priority Tax Claims</u>: Each holder of a priority tax claim, as specified under § 507(a)(8) of the Bankruptcy Code, will be paid in full in cash by the Debtor on the Effective Date of this Plan.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

Claims and interests shall be treated as follows under this Plan:

<u>Secured Claimant I Class</u>: MTAG Caz Creek, LLC, assignee of the City of Danbury Tax Collector will be paid the sum of no less than $5,000 per month commencing on the Effective Date of this Plan, and from month to month thereafter, until the debt is repaid in full. These funds shall be paid out of the rent monies received by the Debtor in the operation of its business. Given the high rate of interest accruing for this claim, Debtor anticipates seeking some additional secured replacement financing to replace this claims at a lower accrual rate. This claim is not disputed or impaired.

<u>Secured Claimant II Class</u>: The Savings Bank of Danbury will be required, pursuant to the equitable powers of the Bankruptcy Court, to accept a modification of its security interest to $3,000,000.00. This amount is ascertained by the amount agreed to be accepted by Savings Bank of Danbury for the purchase of its security interest, which was then reneged upon by Savings Bank of Danbury, this necessitating the Debtor's filing of the voluntary petition. Savings Bank of Danbury will be paid the sum of $5,000.00 commencing on the Effective Date of this Plan, and from month to month thereafter, until the debt is repaid in full. Following the repayment in full of the debts owed to those claimant General Unsecured Class, as outlined below, any remaining available cashflow will be paid to the Savings Bank of Danbury until the $3,000,000.00 debt is repaid in full. Debtor anticipates seeking in the future some additional secured replacement financing to replace this claims at a lower accrual rate, once the objections to the initial claim are fully litigated and resolved. To the extent

the claim is objected to it is impaired, however if the Court determines the disputed portion of the claim in favor of Debtor, this claim will be unimpaired.

General Unsecured Class: All cash assets of the Debtor's estate remaining after the payments made under Article IV of this Plan and after the payments to Secured Claimant I Class and the Secured Claimant II Class under this Article shall be distributed to the holders of Allowed Claims in the General Unsecured Class on a pro rata basis by the Debtor on the Effective Date, and from month to month thereafter, out of the rental income derived from the Debtor's operation of its business. The amount of the pro rata distribution to any class member shall be determined first by determining what percentage any class member's Allowed Claim constitutes of the total Allowed Claims in this class. That percentage shall then be multiplied by the amount of the cash assets of the Debtor's estate remaining after the payment of the administrative expense claims, the priority tax claims and the payment of the secured claims, on a monthly basis. It should be noted that substantially all pre-petition unsecured claims were paid by agreement by the prior receiver from funds being held by the receiver after the filing of the petition. This class of claims is undisputed and unimpaired.

Equity Interest Class: All equity interest holders shall be allowed to retain their equity interest in the Debtor and such interest shall not be diluted by any provision of this Plan but shall be subject to any statutory provisions of the Bankruptcy Code and the Connecticut Limited Liability Company Act.

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

Any party in interest who wishes to dispute: (1) any claim that has been scheduled by the Debtor; or (2) any claim for which a proof of claim has been filed in this Case; (3) or for an Administrative Expense Claim filed in this Case; (4) or a Priority Tax Claim filed in this Case; must object to such claim within fifteen days following the Confirmation Date. No distribution will be made to the holder of a claim that has been objected to until the claim is allowed by the Bankruptcy Court. The amount claimed by any objected-to-claim shall be held by the Debtor until the claim is either allowed or disallowed by the Bankruptcy Court. If the claim is allowed, the holder of the claim shall be paid by the Debtor, subject to the provisions for appeal under the Bankruptcy Code. If a claim is disallowed, then the General Unsecured Class members shall receive an additional pro rata distribution by the same determination as provided in Article IV.

In the event that an objection to any claim is made in the fifteen-day period following the Confirmation Date to any claim listed in any Schedule or for which a proof of claim has been filed in this Case, then the Bankruptcy Court shall retain jurisdiction of this Case past the Effective Date until such objection is heard and the objected to claim is allowed or disallowed.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The leases between the Debtor and tenants at the Property located at 60 Shelter Rock Road, Danbury, Connecticut shall remain in effect and shall not be assigned to any third parties during the duration of the Plan's implementation.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

The Debtor will continue its operate its business as commercial landlord for the Property located at 60 Shelter Rock Road, Danbury, Connecticut. In that capacity, the Debtor will collect rents and pay the expenses of operating its business, included making necessary repairs to the Property. Based on the current rent rolls, the Debtor has sufficient cash flow to pay the secured creditors as provided in Articles III through V of this Plan out of the net rental income from the Property. A substantial portion of the Property remains vacant, and available to rent. As the rent rolls are increased, any additional net rental income realized by the Debtor shall be distributed by the Debtor to the holders of Allowed Claims in the General Unsecured Class on a monthly, pro rata basis. The amount of the pro rata distribution to any class member shall be determined first by determining what percentage any class member's Allowed Claim constitutes of the total Allowed Claims in this class. That percentage shall then be multiplied by the amount of the cash assets of the Debtor's estate remaining after the payment of the administrative expense claims, the priority tax claims and the payment of the secured claims, on a monthly basis. Following a full repayment of the holders of the Allowed Claims in the General Unsecured Class, any additional net rental income of the Debtor's business operation shall be paid to Secured Claimant II class, until said debt is fully repaid. The Debtor shall hold in trust all funds it receives to be used for payment and distribution according to the provisions of this Plan. Furthermore, Debtor has received substantial interest in post petition refinancing of the Property to pay all prior undisputed claims at aggressive market rates which will accelerate liquidation of these secured amounts.

## ARTICLE VIII
## GENERAL PROVISIONS

8.01 <u>Definitions and Rules of Construction</u>. The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the definitions provided in Article I above.

8.02 <u>Effective Date of Plan</u>. The Effective Date of this Plan is the thirtieth day following the date of the entry of the order of confirmation unless such date shall be a holiday or weekend, in which case the effective date shall be the next successive business day. If a stay of the confirmation order is in effect

on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

8.03 <u>Severability</u>. If any Plan provision is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04 <u>Binding Effect</u>. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Bankruptcy Rules), the laws of the State of Connecticut govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.05 <u>Captions</u>. Plan headings are for convenience only and do not affect the meaning or interpretation of this Plan.

## ARTICLE IX
## DISCHARGE

Although this is a liquidating plan, the Debtor may continue operation and therefore is eligible for discharge under § 1141(d)(6)(A) of the Bankruptcy Code. On the confirmation date of this Plan, the debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Bankruptcy Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Bankruptcy Rules; or (iii) of a kind specified in Bankruptcy Code § 1141(d)(6)(B).

Dated: Norwalk, Connecticut
       June 2, 2014

Debtor:        60 SHELTER ROCK ASSOCIATES, LLC

               By: /s/ Mark Stern

        MARK STERN, Esq.
        MARK STERN, ESQ. (ct01701)
        Mark Stern & Associates, LLC
        PO Box 2129
        Norwalk, CT 06852-2129
        (203) 853-2222
        mark@msternlaw.com